UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GABINO GENAO,

                          Plaintiff,

              -against-

CITY OF NEW YORK, *et al.*

                          Defendants.

20-CV-4872 (LLS)

ORDER TO AMEND

LOUIS L. STANTON, United States District Judge:

Plaintiff, a pretrial detainee currently detained in Manhattan Detention Center (MDC), brings this *pro se* action under 42 U.S.C. § 1983. By order dated July 9, 2020, the Court granted Plaintiff's request to proceed without prepayment of fees, that is, *in forma pauperis* (IFP).[1] For the reasons set forth below, the Court grants Plaintiff leave to file an amended complaint within sixty days of the date of this order.

## STANDARD OF REVIEW

The Prison Litigation Reform Act requires that federal courts screen complaints brought by prisoners who seek relief against a governmental entity or an officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). The Court must dismiss a prisoner's IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *see Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). The Court must also dismiss a complaint if the court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

---

[1] Prisoners are not exempt from paying the full filing fee even when they have been granted permission to proceed IFP. *See* 28 U.S.C. § 1915(b)(1).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

The Supreme Court has held that under Rule 8, a complaint must include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

## BACKGROUND

Plaintiff Gabino Genao ("Plaintiff") brings this action against Defendants the City of New York, the New York City Department of Correction (DOC), Warden Sherma Dunbar, "OSIU Dept. Warden" Sanchez, "MDC CIB Officer" Michael Everson, Suffolk County Hearing Officer Yascone, "IG Officer Suffolk County Riverhead Corr." Anthony Germano, "IG Officer Suffolk County Riverhead Corr." Bertolli, "OSIU Dept. Warden" Guidy, "OSIU Dept. Warden"

Smalls, "MDC Security Capt." Hernandez, OSIU Chief Stokes, a "Suffolk County LT. (Riverhead Correctional)" Jane Doe, DOC Commissioner John Doe, and DOC Bureau Chief John Doe (collectively "Defendants"). Plaintiff alleges that Defendants retaliated against him and violated his due process rights.

The following facts are from the complaint. On November 14, 2019, Plaintiff was told to "Pack up" by DOC staff. (ECF No. 1 at 7.) When Plaintiff asked where he was going and why, he did not receive any answers. (*Id.*) He was transferred into the custody of ESU officers, who "searched [him] and put [him]" into a van "with no known [d]estination." (*Id.*) Plaintiff did not have "any issues with anyone and felt [he] was being targeted by OSIU Sec. as well as other DOC staff CIB Everson, Sec Capt. Hernandez and Warden Dunbar." (*Id.*) "There was no provocation for this treatment." (*Id.*)

Plaintiff was searched and "welcomed" by 12 Suffolk County officers "in an intimidating fashion. [He] was afraid and feared retaliation from staff." (*Id.*) He was told that Suffolk was not like Rikers and, "We will kill you out here." (*Id.*) Plaintiff complied with everything officers asked of him, and he was placed in intake for five days. (*Id.*) He was then transferred to administrative segregation, where he was locked away for 21 hours a day. (*Id.*) He asked the "IG of Suffolk Riverhead" when he would be "able to go to a regular housing area." (*Id.*) But he was told "by IG that it wasn't up to them." (*Id.*) Plaintiff wrote grievances "that were all denied." (*Id.* at 8.) Once he "began to ask and make complaints . . . Suffolk County . . . immediately search[ed] [him] and thr[e]w [him] in the Box." (*Id.*) Suffolk gave Plaintiff 115 days in "the Box," from January 23, 2020, to May 18, 2020, and held hearings without Plaintiff's being present. (*Id.*) Plaintiff was also not allowed to represent himself and "suffered ten days with no property in a 'special cell' [w]here [he] had 1 hour of recreation and not the allowed 3 hours by

NYS Law." (*Id.*) Plaintiff "made multiple complaints and on the morning of Jan[uary] 30, 2020, [he] was transferred [b]ack to Rikers Island [where he] was held with no property for 10 days, causing [him] to feel anxiety, depression, and suicidal thoughts, as [he] was held in the 'Super Box.'" (*Id.*)

In Rikers Island custody, Plaintiff "was placed in N.I.C. where [he] was held secluded from population once again . . .  by OSIU." (*Id.* at 9.) At that point, Plaintiff had gone "months without a ticket." (*Id.*) He asked security "why he didn't receive a new turn around [b]ook [and] case [number] since [he] left DOC custody for over two months. They told [him] that was 'optional.'" (*Id.*) By not issuing a new number, Plaintiff cannot go back into population and "be treated normally as a pretrial detainee." (*Id.*) Plaintiff's Substitute Jail Order was also "apparently revocated [sic]" and "basically swept 'under the wrong [sic].'" (*Id.*) Thus, it is as if Plaintiff "never left DOC custody." (*Id.*)

Plaintiff has still not been told "why [he is] not allowed back into population. [He] feel[s] so secluded from inmate contact and it's [a]ffecting [him] psychologically, physically and emotionally." (*Id.*) "Rikers knowingly transferred [him] to Suffolk with intent for them to hold [him] in the Box as a form of torture." (*Id.*) Visitation was also "horrid for [him] and [his] family."

Plaintiff alleges that his Fifth, Eighth, and Fourteenth Amendment rights were violated, and that he suffered pain and suffering in addition to psychological, mental, and physical abuse. (*Id.* at 10.) Plaintiff seeks "$1 million cash compensation and punitive damages." (*Id.*)

## DISCUSSION

Plaintiff alleges that Defendants violated his constitutional rights and he brings claims under § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege (1) a deprivation of a right secured by the Constitution or laws of the United States, and (2) the person who deprived

the plaintiff of that right acted under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

**A.      City of New York**

Plaintiff names the City of New York as a Defendant, but he fails to allege facts suggesting that a policy, custom, or practice of the City of New York caused a violation of his constitutional rights.

When a plaintiff sues a municipality under § 1983, it is not enough for the plaintiff to allege that one of the municipality's employees or agents engaged in some wrongdoing. The plaintiff must show that the municipality itself caused the violation of the plaintiff's rights. *See Connick v. Thompson,* 131 S. Ct. 1350, 1359 (2011) ("A municipality or other local government may be liable under this section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation.") (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.,* 436 U.S. 658, 692 (1978)); *Cash v. Cnty. of Erie,* 654 F.3d 324, 333 (2d Cir. 2011). In other words, to state a § 1983 claim against a municipality, the plaintiff must allege facts showing (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *See Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 403 (1997) (internal citations omitted).

Plaintiff alleges that "Rikers knowingly transferred [him] to Suffolk with intent for them to hold [him] in the Box as a form of torture," (ECF No. 1 at 9), but he does not allege that this is a municipal policy, custom, or practice of the City of New York. Plaintiff's claims against the City of New York are therefore dismissed without prejudice. If Plaintiff files an amended complaint and wishes to assert claims against this Defendant, he should name the City of New

York as a Defendant in the caption of the amended complaint, and allege facts showing that his claims arise from a municipal policy, custom, or practice.

## B.  Department of Correction

Plaintiff's claims against the New York City Department of Correction are dismissed because an agency of the City of New York is not an entity that can be sued. N.Y. City Charter ch. 17, § 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007); *see also Emerson v. City of New York*, 740 F. Supp. 2d 385, 396 (S.D.N.Y. 2010) ("[A] plaintiff is generally prohibited from suing a municipal agency.").

## C.  Retaliation

"[C]ourts must approach prisoner claims of retaliation with skepticism and particular care," *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)). "Retaliation claims are 'prone to abuse' since prisoners can claim retaliation for every decision they dislike." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983), *overruled on other grounds*, *Swierkiewicz*, 534 U.S. 506). To state a First Amendment retaliation claim under Section 1983, a prisoner must allege facts showing that "(1) the speech or conduct at issue was protected, (2) the defendant took adverse action against the plaintiff, and (3) there was a causal connection between the protected speech and the adverse action." *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (quoting *Dawes*, 239 F.3d at 492). By filing a prison grievance, a plaintiff participates in a protected activity. *See id.* at 384. Furthermore, an adverse action must be "retaliatory conduct ... [that] would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights... Otherwise, the retaliatory

6

act is simply *de minimis* and therefore outside the ambit of constitutional protection." *Dawes*, 239 F.3d at 492-93.

A plaintiff can allege a causal connection giving rise to an inference of retaliation by alleging that the protected activity was close in time to the adverse action. See *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001); accord *Gorman–Bakos v. Cornell Coop. Ext.*, 252 F.3d 545, 554 (2d Cir. 2001). Compare *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (passage of six months between the dismissal of Plaintiff's lawsuit and an allegedly retaliatory beating by a correction officer who was a defendant in the prior lawsuit was sufficiently close to support an inference of a causal connection), with *Hollander v. American Cyanamid Co.*, 895 F.2d 80, 85-86 (2d Cir. 1990) (finding a lack of evidence that an adverse action, taken three months after the plaintiff' s EEOC complaint, was in response to the protected activity).

1.      Transfer from Manhattan Detention Center[2]

Plaintiff alleges that he was transferred from MDC despite not having "any issues with anyone." (ECF No. 1 at 7.) He "felt targeted by OSIU Sec. as well as other DOC staff CIB Everson, Sec Capt. Hernandez and Warden Dunbar." (*Id.* at 7.) He also alleges that "Rikers knowingly transferred [him] to Suffolk with intent for them to hold [him] in the Box as a form of torture." (*Id.* at 9.)

Plaintiff does not state facts suggesting that he was engaged in any protected activity. Plaintiff's complaint fails to indicate that Defendants' actions constituted an adverse action or that there was a causal connection between the transfer and any alleged protected activity. In fact, the Substitute Jail Order Request attached to Plaintiff's complaint belies his assertions; on

---

[2] Although Plaintiff was transferred from MDC, he later states that on January 30, 2020, he was "transferred back to Rikers." (ECF No. 1 at 8.) Thus, it is unclear whether Plaintiff is referring to MDC or Rikers.

this form, Defendant identified Plaintiff as a member of the Trinitarios gang and noted that Plaintiff's transfer was because of "safety and security concerns." (*Id.* at 12.)

      2.      Suffolk County Confinement

Plaintiff alleges that he "wrote grievances that were all denied" while he was in Suffolk County custody. (*Id.* at 8.) When Plaintiff "began to ask and make complaints, . . . Suffolk County retaliated against [him by] immediately searching [him] and throwing [him] in the Box." (*Id.*)

Here, Plaintiff alleges that he was engaged in the protected activity of writing grievances. Plaintiff does not, however, allege any causal connection between his filing grievances and his being thrown in the Box. According to the Disciplinary Hearing Dispositions, Plaintiff was locked in the Box after he "made threats to staff and other inmates" and was "in possession of weapons and [a] cuff key" on two separate occasions. (*Id.* at 14-15.)

In his amended complaint, Plaintiff must allege facts to support his claim that his transfer from Manhattan Detention Center and the confinement at Suffolk County were in retaliation for protected activity.

**D.    Disciplinary Due Process**

Plaintiff asserts due process claims, arising under the Fourteenth Amendment, in connection with his disciplinary proceedings. Prisoners generally do not have a "constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986). "A prisoner's liberty interest is implicated by prison discipline, such as SHU confinement, only if the discipline 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). The Second Circuit has not established a bright-

line rule that a certain period of time in SHU automatically constitutes an atypical and significant hardship. Instead, a court must consider both the duration and conditions of SHU confinement because "especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical." *Id.*; *compare Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004) ("Under abnormal or unusual . . . conditions, periods of confinement of less than 101 days may implicate a liberty interest."), *with Sealey v. Gitner* 197 F.3d 578, 580 (2d Cir. 1999) (holding that a 101-day period of segregation in a SHU did not impair a protected liberty interest).

A prisoner whose liberty interest is restrained for disciplinary reasons is entitled to the procedural protections set forth in *Wolff v. McDonnell*, 418 U.S. 539 (1974). Under *Wolff*, "an inmate is entitled to advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken." *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citing *Wolff*, 418 U.S. at 563-67). Because a pretrial detainee cannot be punished, "in assessing whether restrictions on pretrial detainees comport with substantive due process, '[a] court must decide whether the [restriction] is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.'" *Almighty Supreme Born Allah v. Milling*, 876 F.3d 48, 55 (2d Cir. 2017) (quoting *Bell v. Wolfish*, 441 U.S. 520, 538 (1979)) (alterations in original), *cert. denied*, 139 S. Ct. 49 (2018). A prisoner to be placed in Ad Seg must receive notice why he is being placed there and an opportunity to respond. *Proctor v. LeClair*, 846 F.3d 597, 609 (2d Cir. 2017) (quoting *Hewitt v. Helms*, 459 U.S. 460, 476 (1983)). Assistance in presenting a defense is also guaranteed. *See Eng v. Coughlin*, 858 F.2d 889, 897

(2d Cir. 1998) (Although there is no right to counsel in disciplinary proceedings, "[p]rison authorities have a constitutional obligation to provide assistance to an inmate in marshaling evidence and presenting a defense when he is faced with disciplinary charges.").

Plaintiff alleges that his transfer from MDC "was done illegally violating [his] Due Process Rights [because he did not have] any issues with anyone [and] there was no provocation for [the transfer]." (ECF No. 1 at 7.) "[T]he due process clause is not implicated when a pre-trial detainee is transferred from one facility to another," *Lipton v. Cnty. of Orange, NY,* 315 F. Supp. 2d 434, 447 (S.D.N.Y. 2004) (quoting *Covino v. Vt. Dep't of Corrs.*, 933 F.2d 128, 129 (2d Cir. 1991) (*per curiam*)). In fact, "[p]rison officials retain broad discretion to transfer pretrial detainees." *Id.* Thus, the due process clause does not apply to Plaintiff's allegations that MDC violated his due process rights by transferring him to Suffolk County, and the Court therefore dismisses Plaintiff's claims that he was illegally transferred to the Suffolk County jail.

Plaintiff also alleges that Suffolk County officials violated his due process rights because there was a "hearing without [his being] present" and he was "not allowed to represent [him]self." (*Id.* at 8.) The Disciplinary Hearing Dispositions that Plaintiff attaches to his complaint show that dispositions were "based on officers report," and the "inmate [was] not present for hearing." (*Id.* at 14-15.) Additionally, in the area marked "inmate's signature" on both forms, Plaintiff's signature does not appear, but there are numbers written in that area. (*Id.*) In his amended complaint, Plaintiff should allege any additional facts in support of his claim that Defendants violated his due process rights by conducting the hearings without his being present and by not allowing him to represent himself.

## E.    Conditions-of-Confinement Claim

The Court construes Plaintiff's allegations as asserting a conditions-of-confinement claim. The Due Process Clause of the Fourteenth Amendment, not the Cruel and Unusual

Punishments Clause of the Eighth Amendment, governs a pretrial detainee's claims of

unconstitutional conditions of confinement. *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979).

Under the Fourteenth Amendment, "the proper inquiry is whether those conditions amount to

punishment of the detainee." *Id.* at 535. If the conditions are not deemed punitive, then the

plaintiff's allegations are evaluated under a standard of deliberate indifference. *Abreu v. Schriro*,

No. 1:14-CV-6418, 2016 WL 3647958, at *4 (S.D.N.Y. July 1, 2016).

1.      Punitive Conditions

"If a particular condition or restriction of pretrial detention is reasonably related to a

legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Bell*, 441

U.S. at 539. Thus, if a condition is not reasonably related to a legitimate governmental objective

or is "arbitrary or purposeless," then it "may not constitutionally be inflicted upon detainees." *Id.*

"[W]hen an institutional restriction infringes a specific constitutional guarantee . . . the

practice must be evaluated in the light of the central objective of prison administration,

safeguarding institutional security." *Id.* at 547 (citing *Jones v. North Carolina Prisoners' Labor

Union*, 433 U.S. 119, 129 (1977)); *see e.g. Tafari v. McCarthy*, 714 F. Supp. 2d 317, 368

(N.D.N.Y. 2010) (concluding that the correctional facility had a "legitimate penological interest

in protecting both guards and inmates by keeping the lights constantly illuminated," as guards

conducted rounds every thirty minutes); *Bell*, 441 U.S. at 559 ("A detention facility is a unique

place fraught with serious security dangers. Smuggling of money, drugs, weapons, and other

contraband is all too common an occurrence.").

2.      Deliberate Indifference

To state a claim of deliberate indifference, the Plaintiff must satisfy two elements: (1) an

"objective" element, which requires a "showing that the challenged conditions were sufficiently

serious to constitute objective deprivations of the right to due process," and (2) a "subjective" or

11

"mental element" prong, which requires a "showing that the officer acted with at least deliberate indifference to the challenged conditions." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).

To meet the first element, the plaintiff "must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his [or her] health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). The deprivations must also be measured by their "severity and duration, not the resulting injury." *Darnell*, 849 F.3d at 32.

The second element of the deliberate indifference test requires the plaintiff to allege "that the [defendant] acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate that the condition posed to the pretrial detainee even though the [defendant] knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at 35.

Here, Plaintiff alleges that Suffolk County put him in a 'special cell' for ten days. (ECF No. 1 at 8.) Plaintiff did not have his property and was given "[one] hour of recreation and not the allowed [three] hours by [New York State] law."[3] (*Id.*) Plaintiff's attachments indicate that he was placed in a special cell for ten days because he "made threats to staff and other inmates," in addition to being in "possession of weapons and [a] cuff key." (*Id.* at 14-15.) This suggests that Defendants had a legitimate penological interest in locking Plaintiff in the "special cell" and their actions were not "arbitrary or purposeless."

Plaintiff also alleges that once he was back in Rikers custody, he "was held with no property for [ten] days . . . as [he] was in the 'super box,'" and he was separated from the general

---

[3] Plaintiff's belief that he is entitled to three hours of recreation per day is unfounded. Detainees "will be permitted to have 1 hour of recreation daily." New York City Department of Correction, *Handbook for Detained and Sentenced Individuals* 36-37 (2019).

population. (*Id.* at 8-9.) The Substitute Jail Order (SJO) that Plaintiff attaches to his complaint shows that Defendants identified Plaintiff as a member of the Trinitarios gang, and that Defendants transferred Plaintiff from MDC for "safety and security reasons" (*Id.* at 12). If Plaintiff intends to allege that this confinement amounted to punishment, he must allege facts suggesting that the conditions of his confinement upon returning were unrelated to this or any other legitimate government interest.

Plaintiff also fails to allege facts suggesting that Defendants' actions "posed an unreasonable risk of serious damage" to Plaintiff's health. *Walker*, 717 F.3d at 119. Even if Plaintiff were to state a claim satisfying the first element, he does not allege that Defendants at the Suffolk County Jail and Rikers knew or should have known that the actions would pose a serious risk of harm to Plaintiff's health or safety, and that they disregarded that risk. Plaintiff should allege in his amended complaint any facts in support of his claim of deliberate indifference.

## LEAVE TO AMEND

Plaintiff is granted leave to amend his complaint to detail his retaliation, disciplinary due process, and conditions-of-confinement claims. In the statement of claim, Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against each defendant named in the amended complaint. Plaintiff is also directed to provide the addresses for any named defendants. To the greatest extent possible, Plaintiff's amended complaint must:

a) give the names and titles of all relevant persons;

b) describe all relevant events, stating the facts that support Plaintiff's case including what each defendant did or failed to do;

c) give the dates and times of each relevant event or, if not known, the approximate date and time of each relevant event;

d) give the location where each relevant event occurred;

e)  describe how each defendant's acts or omissions violated Plaintiff's rights and describe the injuries Plaintiff suffered; and

f)  state what relief Plaintiff seeks from the Court, such as money damages, injunctive relief, or declaratory relief.

Essentially, the body of Plaintiff's amended complaint must tell the Court: who violated his federally protected rights; what facts show that his federally protected rights were violated; when such violation occurred; where such violation occurred; and why Plaintiff is entitled to relief. Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wishes to maintain must be included in the amended complaint.

## CONCLUSION

The Clerk of Court is directed to mail a copy of this order to Plaintiff and note service on the docket.

Plaintiff is granted leave to file an amended complaint that complies with the standard set forth above. Plaintiff must submit the amended complaint to this Court's Pro Se Intake Unit within sixty days of the date of this order, caption the document as an "Amended Complaint," and label the document with docket number 20-CV-4872 (LLS). A Civil Rights Amended Complaint Form is attached to this order. No summons will be issued at this time. If Plaintiff fails to comply within the time allowed, and he cannot show good cause to excuse such failure, the complaint will be dismissed for failure to state a claim upon which relief may be granted.

SO ORDERED.

Dated:    July 21, 2020
          New York, New York

                                        _Louis L. Stanton_
                                        Louis L. Stanton
                                        U.S.D.J.

14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

_____
Write the full name of each plaintiff.


-against-

_____

_____

_____

Write the full name of each defendant. If you cannot fit the
names of all of the defendants in the space provided, please
write "see attached" in the space above and attach an
additional sheet of paper with the full list of names. The
names listed above must be identical to those contained in
Section IV.

_____CV_____

(Include case number if one has been
assigned)


**COMPLAINT**

(Prisoner)

Do you want a jury trial?
☐ Yes    ☐ No

---

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed
with the court should therefore *not* contain: an individual's full social security number or full
birth date; the full name of a person known to be a minor; or a complete financial account
number. A filing may include *only*: the last four digits of a social security number; the year of
an individual's birth; a minor's initials; and the last four digits of a financial account number.
See Federal Rule of Civil Procedure 5.2.

## I.     LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "*Bivens*" action (against federal defendants).

☐  Violation of my federal constitutional rights

☐  Other: _____

## II.     PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

First Name                    Middle Initial              Last Name

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

Current Place of Detention

Institutional Address

County, City                              State                    Zip Code

## III.     PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐  Pretrial detainee

☐  Civilly committed detainee

☐  Immigration detainee

☐  Convicted and sentenced prisoner

☐  Other: _____

## IV.    DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

Defendant 2:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

Defendant 3:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

Defendant 4:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

## V.      STATEMENT OF CLAIM

Place(s) of occurrence:  _____

Date(s) of occurrence:  _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were
harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach
additional pages as necessary.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____

_____

_____

_____

_____

## VI.    RELIEF

State briefly what money damages or other relief you want the court to order.

_____

_____

_____

_____

_____

_____

_____

## VII.   PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| Dated | Plaintiff's Signature |

| | | |
|---|---|---|
| First Name | Middle Initial | Last Name |

Prison Address

| | | |
|---|---|---|
| County, City | State | Zip Code |

Date on which I am delivering this complaint to prison authorities for mailing:  _____

Page 6