USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/22/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GABINO GENAO,

                  Plaintiff,

-against-

CITY OF NEW YORK; DOC COMMISSIONER; OSIU DEPT. SANCHEZ; OSIU DEPT. GUIDY; OSIU DEPT. WARDEN SMALLS; MDC CIB MICHAEL EVERSON; MDC SECURITY CAPT. HERNANDEZ; SUFFOLK COUNTY HEARING OFFICER YASCONE, BADGE # 1276; IG OFFICER SUFFOLK COUNTY ANTHONY GERMANO, BADGE # 1057, ALSO KNOWN AS MR. G.; IG OFFICER SUFFOLK COUNTY BERTOLLI, ALSO KNOWN AS MR. B.; LT. JANE DOE, SUFFOLK COUNTY; OSIU CHIEF STOKES; WARDEN SHERMA DUNBAR; DOC BUREAU CHIEF; CYNTHIA BRANN, COMMISSIONER OF DOC; and PEGGY JOSEPH, OSIU DEPT.;

                  Defendant.

1:20-cv-4872 (MKV)

**ORDER GRANTING MOTION TO DISMISS**

---

MARY KAY VYSKOCIL, United States District Judge:

    In this Section 1983 case, *pro se* Plaintiff Gabino Genao alleges that while he was a pre-trial detainee at MDC, Suffolk County Jail, and Rikers Island, the above-named defendants violated his First, Fourth, Eighth and Fourteenth Amendment rights. Defendants the City of New York, Warden Dunbar, and Commissioner Brann (collectively the "City Defendants") move to dismiss the Amended Complaint [ECF No. 5] ("Am. Compl.") for failure to state a claim upon which relief can be granted. [ECF No. 50]. For the reasons stated herein, the Motion is granted.

**BACKGROUND**

The following facts, taken from the Amended Complaint, are assumed to be true for purposes of this motion. *See, e.g., LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009). The Court summarizes here only the allegations relevant to the claims relating to the pending Motion.

In November 2019, Plaintiff was a pre-trial detainee at the Metropolitan Detention Center ("MDC"). Am. Compl. at 7, 21.[1] While there, he was "taken outside of [his] housing unit" to speak to an officer, who told him to "go speak to a rival gang member in another facility" and "make things right" or "you're all the way outta here." Am. Compl. at 7. Plaintiff "respectfully declined [the] offer." Am. Compl. at 7.

The next day, Plaintiff was told to "pack up" and leave, without explanation for why or where he was going. Am. Compl. at 7. He was processed through intake where he was strip searched and placed in a van. Am. Compl. at 7. Apparently unbeknownst to Plaintiff, he was being transported to a facility in Suffolk County. *See* Am. Compl. at 8. Upon arrival, Plaintiff was "welcomed by 12 officers in an intimidating fashion" who told him "this is not Rikers – we will kill you out here." Am. Compl. at 8. After being strip searched again and "placed in intake for 5 days," Plaintiff was processed to Administrative Segregation, which greatly limited his ability to leave his cell. *See* Am. Compl. at 8. Plaintiff then began to "write the Suffolk County Office," as well as file grievances, trying to determine why he was transferred and not placed in regular population. Am. Compl. at 8. "After several weeks of complaining" Plaintiff and his

---

[1] Plaintiff's Amended Complaint does not include internal pagination. The Court therefore cites to the allegations contained in the Amended Complaint as they appear at the ECF pagination.

cell were randomly searched by a number of officers, who stated they "have to find something". Am. Compl. at 8-9.

Plaintiff was strip searched and taken to a hospital to be searched for contraband via x-ray. Am. Compl. at 9. When the result came back negative for contraband, the officers took Plaintiff back to the Suffolk County facility where they "instructed medical staff" to give him laxatives. Am. Compl. at 9. Plaintiff then sat in a cell, where officers forced Plaintiff to defecate in front of them. Am. Compl. at 9. The officers made inappropriate comments throughout this process, such as "he has a nice ass" and "look how naturally he squats." Am. Compl. at 9. After defecating twice, and informing the officers that he could not go again, Plaintiff was made to sit, half-naked, on top of a bucket, while the officers continued to ridicule him. Am. Compl. at 9-10. After enduring ten minutes, Plaintiff was told to stand, bend over, and expose himself to the officers. Am. Compl. at 10. Thereafter, the officers brought Plaintiff back to the medical unit to request he be given more laxatives. Am. Compl. at 10. When a nurse refused to give Plaintiff more laxatives, the officers located another doctor who approved their request. Am. Compl. at 10. The officers placed Plaintiff in a straitjacket and returned him to a "dry cell." Am. Compl. at 10. Eighteen hours after his ordeal began, Plaintiff defecated again. Am. Compl. 10-11. The officers then told Plaintiff that they would place him in another housing unit, and "take it easy on" him as a "favor" if he stopped writing grievances. Am. Compl. at 11.

Weeks later, Plaintiff was transferred to Rikers Island. Am Compl. at 13. Plaintiff inquired during intake if he would be given a new "book number," which would permit him to return to general population, but he was not told if he would receive one. Am. Compl. at 13-14.

Plaintiff alleges that these actions (among others) were a violation of his First, Fourth, Eighth and Fourteenth Amendment rights, and seeks unenumerated compensatory and punitive

damages. Am. Compl. at 17. Relevant to the present motion, Plaintiff alleges that Defendant Warden Dunbar first transferred him to retaliate against him and to evade regulations in place at MDC. *See* Am. Compl. at 7, 12. Plaintiff also alleges that the allegations underlying his complaint are the result of a City "policy or custom." *See* Am. Compl. at 18.

## PROCEDURAL HISTORY

Plaintiff initiated this action on June 23, 2020. [ECF No. 1]. Thereafter, Judge Stanton (then presiding over the case) directed Plaintiff to amend his complaint to provide more detailed allegations. [ECF No. 5]. Plaintiff timely filed the operative Amended Complaint. [ECF No. 6]. After this case was reassigned to me, Corporation Counsel appeared on behalf of the City Defendants and sought leave to move to dismiss the action. [ECF No. 46]. The Court granted leave for the City to move, [ECF No. 49], and thereafter set a briefing schedule in connection with the motion. ECF No. 49.

The City Defendants timely filed their motion and a memorandum of law in support [ECF No. 51] ("Mem."). Plaintiff did not timely file any opposition. The Court thereafter set a new deadline for Plaintiff to respond to the pending motion. [ECF No. 56]. Plaintiff, who remains incarcerated, then filed a letter stating that he had not received any motion to dismiss and he was being deprived of legal mail. [ECF No. 60]. Notwithstanding that Plaintiff had obviously received at least the latest scheduling order that precipitated his letter, the Court directed counsel for the City Defendants to coordinate with the warden to ensure that Plaintiff received motion papers and related orders. [ECF No. 60]. Counsel for the City Defendants subsequently filed a letter advising that the motion was "hand-delivered" to Plaintiff. [ECF No. 62]. Plaintiff thereafter filed a letter requesting a 60-day extension of time to respond to the motion because he was "overwhelmed" and lacked "proper access to the law library." [ECF No.

4

63]. The Court granted Plaintiff's request, and again extended Plaintiff's time to oppose the motion to March 17, 2022. [ECF No. 63].

The deadline has passed and as of the date of this opinion, the Court has not received any opposition from the Plaintiff to the City Defendants' Motion to Dismiss. As a result, the Court deems the motion unopposed.

## **LEGAL STANDARD**

The City Defendants move this Court pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's Amended Complaint as against the City, Warden Dunbar, and Commissioner Brann for failure to state a claim upon which relief can be granted. To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). While a sufficiently pleaded complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks, alterations, and citations omitted); *see also Iqbal*, 556 U.S. at 678 (noting that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" (citing *Twombly*, 550 U.S. at 555)). In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 662.

Plaintiff represents himself in this action *pro se*. "It is well established that a court is ordinarily obligated to afford a special solicitude to *pro se* litigants." *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010). The Court therefore liberally construes Plaintiff's pleadings to raise the strongest claims they suggest. *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015). "At the same time, a *pro se* complaint must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

Although the Court deems the City Defendants' Motion unopposed, the failure to oppose does not, by itself, justify dismissal. *See Goldberg v. Danaher*, 599 F.3d 181, 183-84 (2d Cir. 2010); *McCall v. Pataki*, 232 F.3d 321, 322-23 (2d Cir. 2000). "[T]he sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law." *Goldberg*, 599 F.3d at 184 (quoting *McCall*, 232 F.3d at 322-23). Consequently, when deciding an unopposed motion to dismiss for failure to state a claim, the Court must, as always, "assume the truth of a pleading's factual allegations and test only its legal sufficiency." *McCall*, 232 F.3d at 322.

## DISCUSSION

Plaintiff asserts ten causes of action against various defendants in his Amended Complaint, all nominally brought pursuant to 42 U.S.C. § 1983 ("Section 1983"). That law allows citizens to sue a state actor or municipality for the deprivation of "any rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983.

Construing the Amended Complaint liberally, Plaintiff asserts seven causes of action against the City Defendants: 1) a claim that the City Defendants violated Plaintiff's Fourteenth Amendment procedural due process rights when transferring him to Suffolk County without notice; 2) a claim that the City Defendants violated Plaintiff's Fourteenth Amendment substantive due process rights when they punitively transferred him to Suffolk County; 3) a

6

claim against the City deriving from the Fourteenth Amendment for subjecting him to sexual harassment in Suffolk County; 4) a claim that the City violated Plaintiff's Fourth Amendment right to be free from unreasonable searches when subjected to cavity searches; 5) a First Amendment retaliation claim against the City; 6) an Eighth Amendment claim against the City for subjecting him to cruel and unusual punishment while in Suffolk County; and 7) a "fraud" or "departmental corruption" claim against the City and Defendant Brann for "any and all fraudulent e-mails and malicious intent to cover up their wrong doings."

## I. PLAINTIFF'S FRAUD CLAIM FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

The Court construes Plaintiff's fraud claim (Count 10) brought pursuant to Section 1983 as a state-law claim for fraud. *See* Am. Compl. at 27. This action invokes the Court's federal question jurisdiction, and the Court therefore has supplemental jurisdiction to decide pendant claims involving state law. *See* 28 U.S.C. § 1367. To plead a *prima facie* claim for fraud under New York common law,[2] a plaintiff must allege that (1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance. *Banque Arabe et Internationale D'Investissement v. Maryland Nat. Bank*, 57 F.3d 146, 153 (2d Cir. 1995). Plaintiff's fraud claim is subject to a heightened pleading standard under Federal Rule of Civil Procedure 9. Plaintiff's fraud claim fails because he does not allege any representation made to him with the intent to deceive and upon which he relied, much less that a

---

[2] A federal court exercising supplemental jurisdiction over state law claims must apply the choice of law rules of the forum state, here New York, to determine which state's substantive law applies. *Rogers v. Grimaldi*, 875 F.2d 994, 1002 (2d Cir. 1989). Fraud claims sound in tort. In tort cases, New York courts apply the substantive law of the jurisdiction that has the most significant interest in "the specific issue raised in the litigation." *Schultz v. Boy Scouts of Am., Inc.*, 65 N.Y.2d 189, 196, 480 N.E.2d 679, 491 N.Y.S.2d 90 (N.Y. 1985). Because all actions occurred in New York, the Court applies New York law to Plaintiff's fraud claim.

7

representation was false in a material respect. *See Lichtenstein v. Reassure America Life Ins. Co.*, 2009 WL 792080, at *8 (E.D.N.Y. Mar. 23, 2009) (*pro se* allegations of fraud must comply with the particularity requirements of Rule 9(b)).

## II. THE CLAIMS AGAINST WARDEN DUNBAR AND COMMISSIONER BRANN FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Construing the Amended Complaint liberally, Plaintiff appears to assert a claim for supervisory liability under Section 1983 against Warden Dunbar and Commissioner Brann. Am. Compl. at 18-19. "It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F. 3d 133, 138 (2d Cir. 2013). The Plaintiff must show that

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* at 139 (italics and quotation marks omitted) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). In the context of supervisory defendants, such as Warden Dunbar and Commissioner Brann, liability under Section 1983 "depends on a showing of some personal responsibility, and cannot rest on *respondeat superior*." *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citing *Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1065 (2d Cir. 1989)). Mere "proof of 'linkage in the prison chain of command' is insufficient." *Id.* (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)). "[V]icarious liability is [also] inapplicable to . . . §

8

1983 suits, [and so] a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Plaintiff pleads only conclusory allegations that Warden Dunbar and Commissioner Bran were involved in the events giving rise to Plaintiff's Amended Complaint. With respect to Plaintiff's procedural due process claim that he was transferred without notice, Plaintiff alleges that "Defendants Brann and Dunbar obtained [a] [substitute jail order] transferring me to Suffolk County." Am. Compl. at 18. Plaintiff similarly alleges that Defendants Dunbar and Brann violated his substantive due process rights by punitively transferring him to Suffolk. Am. Compl. at 19. But the substitute jail order Plaintiff attaches to his original complaint does not reflect that either Warden Dunbar or Commissioner Brann signed off on that order, and the document reflects that Plaintiff was "provid[ed] notice" of the transport. [ECF No. 1-1].[3] *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 147 (2d Cir. 2011) (*per curiam*) ("[W]here a conclusory allegation in the complaint is contradicted by a document attached to the complaint, the document controls and the allegation is not accepted as true.").

A defendant in a Section 1983 action "may not be held liable for damages for constitutional violations merely because he held a high position of authority." *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) (quoting *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996)). Plaintiff has alleged no facts to establish that Warden Dunbar was *personally* involved in any constitutional violation or any of the conduct alleged in his Amended Complaint. Plaintiff also does not plead any allegations that Commissioner Brann had any personal involvement in any of

---

[3] Because Plaintiff is proceeding *pro se*, and because he appears to have intended to supplement the original complaint with the more detailed Amended Complaint, the Court considers the exhibits attached to the original complaint for purposes of the current motion. *See Poindexter v. EMI Record Group, Inc.*, 2012 WL 1027639, at *2 (S.D.N.Y. Mar. 27, 2012) ("[E]ven though the Amended Complaint is the operative pleading, the Court may still credit admissions in the original complaint and attached exhibits." (citation omitted)).

9

the alleged constitutional violations giving rise to this action. Plaintiff merely states Commissioner Brann "acted in her capacity as the final municipal policymaker with respect to [substitute jail orders]." Am. Compl. at 18. Vicarious liability is inapplicable to Section 1983 suits. *Iqbal*, 556 U.S. at 676. Accordingly, the claims against Warden Dunbar and Commissioner Brann fail to state a claim upon which relief can be granted.

### III.   THE CLAIMS AGAINST THE CITY FAIL AS A MATTER OF LAW

Plaintiff contends, wholly in conclusory fashion, that the City is liable for essentially all conduct alleged in his Amended Complaint because it occurred as a result of "an official policy or custom" of the City. Am. Compl. at 18, 19, 21, 22, 24, 26, 27. Construing the Amended Complaint generously, Plaintiff appears to allege a *Monell* claim against the City. *See Monell v. Department of Social Service*, 436 U.S. 658 (1978). Under the Supreme Court's decision in *Monell v. Department of Social Service*, local governments and individuals in their official capacity may be held liable in Section 1983 actions when it can be shown that "the denial of a constitutional right [] was caused by an official municipal policy or custom." *Bellamy v. City of New York*, 914 F.3d 727, 756 (2d Cir. 2019).

Plaintiff does not allege facts that suggest that his treatment was the result of a New York City policy or practice. Moreover, Plaintiff does not state which policies or practices of the City are inadequate, and does not draw a cognizable nexus between the purported inadequacy and any purported constitutional violation. Plaintiff merely pleads threadbare recitations of the elements of a *Monell* claim to the effect that the City "caused the violation of [his] rights" because the City "has an official policy or custom." *See e.g.*, Am. Compl. at 19. The Court need not credit Plaintiff's legal conclusions couched as facts. *Iqbal*, 556 U.S. at 678; *see also Walker v. City of New York*, 974 F.2d 293, 297-98 (2d Cir. 1992). Accordingly, the Court grants the City Defendants' motion to dismiss with respect to any *Monell* claim. *Gordon v. City of New York*,

2012 WL 1068023, at *4 (E.D.N.Y. Mar. 29, 2012) (dismissing *Monell* claim where the plaintiff's "allegation [was] unsupported by anything other than the facts of what occurred in his particular case").

Defendant also alleges that the City may be liable for any violation of his rights caused by Commissioner Brann, who "acted in her capacity as the final municipal policymaker." Am. Compl. at 18, 19. While a municipality may be liable under Section 1983 if a "final municipal policymaker" made a decision that leads to a constitutional violation, *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986), Plaintiff does not plausibly allege that Commissioner Brann was involved in any decision with respect to Plaintiff as a final municipal policymaker. *See Jeffes v. Barnes*, 208 F.3d 49, 57-58 (2d Cir. 2000) ("Where a plaintiff relies not on a formally declared or ratified policy, but rather on the theory that the conduct of a given official represents official policy, it is incumbent on the plaintiff to establish that element as a matter of law."). Accordingly, Plaintiff's legal conclusion that Commissioner Brann was a "final municipal policymaker" for purposes of municipal liability legally is not sufficient to state a claim. *Iqbal*, 556 U.S. at 678. All claims asserted against the City therefore fail as a matter of law and must be dismissed.

## IV.   LEAVE TO AMEND

Leave to amend a complaint should be freely given "when justice so requires," Fed R. Civ. P. 15(a)(2), and *pro se* plaintiffs are generally given leave to amend a deficient complaint. *See Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 795-96 (2d Cir. 1999). It is "within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).

The Second Circuit has indicated that district courts should not dismiss a complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any

indication that a valid claim might be stated." *Shabazz v. Bezio*, 511 F. App'x 28, 31 (2d Cir. 2013). Because the allegations in Plaintiff's Amended Complaint are serious, and in light of Plaintiff's *pro se* status, Plaintiff is granted leave to amend to address the deficiencies identified in this opinion.

Any second amended pleading, which must take into account the deficiencies identified herein, shall be filed on or before **April 29, 2022**. **THIS WILL BE PLAINTIFF'S SECOND OPPORTUNITY TO AMEND TO CURE APPARENT DEFICIENCIES IN HIS CLAIMS. NO FURTHER AMENDMENTS WILL BE AUTHORIZED.**

## V. THE REMAINING DEFENDANTS

When seeking leave to file a motion to dismiss on behalf of the City Defendants, [ECF No. 46], Corporation Counsel of the City of New York buried in a footnote a request that the Court "*sua sponte*" stay the time to respond for the remaining Defendants OSIU Dept. Peggy Joseph, OSIU Dept. Guidy, OSIU Chief Stokes, MDC CIB Michael Everson, MDC Security Captain Hernandez, and OSIU Dept. Sanchez (the "Individual Defendants") pending the outcome of this motion because, if granted, "all claims against the named defendants would be dismissed," *id.* n.1. As is clear now, that representation was not true. In granting leave to move to dismiss, the Court *did not* stay the time for the Individual Defendants to respond. [ECF No. 49]. In its moving papers, Corporation Counsel again ferreted a request that the Court *sua sponte* stay all time to respond. *See* Mem. at 1 n.1.

The Court is troubled by the Corporation Counsel's conduct in this case with respect to the Individual Defendants. However, Corporation Counsel leaves the Court little choice but to extend the Individual Defendants' time to respond *nunc pro tunc*. All Defendants must respond to Plaintiff's second amended complaint or, if there is no further amendment, the Individual

Defendants must respond to the now operative Amended Complaint twenty-one days after the April 29 deadline.

## CONCLUSION

For the reasons stated herein, the City Defendants' Motion to Dismiss is GRANTED. Plaintiff is granted leave to file a second amended complaint on or before **April 29, 2022**. All Defendants shall respond to the second amended complaint, if filed, within twenty-one days of its filing, or if there is no further amendment, the Individual Defendants shall respond to the Amended Complaint on or before May 20, 2022. If Plaintiff fails to timely amend his complaint, this Order dismissing the Amended Complaint with respect to the City Defendants shall be with prejudice.

The Clerk of the Court respectfully is requested to mail a copy of this order to Plaintiff at the address of record.

**SO ORDERED.**

**Date:  March 22, 2022**
       **New York, NY**

*/s/ Mary Kay Vyskocil*
**MARY KAY VYSKOCIL**
**United States District Judge**